**SALLQUIST, DRUMMOND & O'CONNOR, P.C.**
1430 East Missouri Avenue, Suite B-125
Phoenix, Arizona 85014
(602) 224-9222 – Telephone
(602) 224-9366 – Facsimile

Dean W. O'Connor, Esq. Bar#011941

Attorneys for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In re:** | CASE NO 09-bk-04665 RJH |
| **ARIZONA ENVIRONMENTAL RECYCLING, L.L.C.**<br>**And**<br>**N-ROUTE, L.L.C.** | **ADMINISTRATIVELY CONSOLIDATED WITH CASE No. 09-bk-04668** |
| **Debtors.** | **AMENDED JOINT DISCLOSURE STATEMENT AND SUMMARY OF JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

### AMENDED JOINT
### DISCLOSURE STATEMENT
### TO ACCOMPANY
### DEBTORS' JOINT PLAN OF REORGANIZATION
### DATED APRIL 21, 2010.

  Arizona Environmental Recycling, L.L.C. and N-Route, L.L.C., Debtors in the above-captioned jointly administered cases, have prepared this Joint Disclosure Statement to assist with the solicitation of acceptances of the Debtors' Joint Plan of Reorganization (the "Plan").

  Though this is a Joint Plan, these cases are not administratively consolidated, only jointly administered, and each Debtor's Plan of reorganization should be reviewed separately as to each Debtor as to feasibility and the requirements for confirmation of a Plan, as defined under the Bankruptcy Code, 11 U.S.C § 1129

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| **I.** | | **INTRODUCTION** | 5 |
| **II.** | | **VOTING** | 6 |
| **III.** | | **REPRESENTATIONS** | 7 |
| **IV.** | | **DEFINITIONS** | 8 |
| **V.** | | **SUMMARY OF PLAN** | 9 |
| | A. | OVERVIEW OF THE PLAN | 9 |
| | B. | TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR | 9 |
| | | 1. Administrative Expenses, Fees and Charges Specified in Section 507(a) (2) | 8 |
| | | 2. Allowed Claims Entitled to Priority under Section 507(a) (8) | 9 |
| | | 3. Allowed Claims Entitled to Priority under Sections 507(a) (3-6) | 9 |
| | C. | TREATMENT OF CLASSIFIED CLAIMS AGAINST THE DEBTOR | 10 |
| | | 1. Claim Amounts | 10 |
| | | 2. General Provisions Applicable to all Allowed Claims and Interests | 10 |
| | | 3. Treatment of Allowed Secured Claims against and Allowed Interest Against the Debtor | 11 |
| | D. | SUMMARY OF OTHER PROVISIONS OF THE PLAN | 12 |
| | | 1. Release of Liens and Interests | 12 |
| | | 2. Stay and Enforcement of Plan | 12 |
| | | 3. Injunction | 13 |
| | | 4. Disputed Claims and Appeals | 13 |
| | | 5. Leases and Executory Contracts | 13 |
| | | 6. Tax Considerations | 14 |

45011.00000.55

| | | | | |
|---|---|---|---|---|
| | | 7. | Retention of Jurisdiction | 14 |
| | | 8. | Effect of Confirmation | 15 |
| **VI.** | | **HISTORICAL BACKGROUND** | | 15 |
| | A. | CURRENT BUSINESS | | 16 |
| | | 1. | Nature of Operation | 15 |
| | A. | PRE-PETITION OPERATIONS | | 15 |
| | B. | CURRENT BUSINESS OF THE DEBTOR | | 16 |
| | C. | PRECONFIRMATION MANAGEMENT OF THE DEBTOR | | 16 |
| **VII.** | | **DEBTOR'S REASON FOR FILING ITS PETITION FOR REORGANIZATION** | | 16 |
| **VIII.** | | **EVENTS FOLLOWING THE FILING OF THE BANKRUPTCY PETITION** | | 16 |
| | A. | EMPLOYMENT OF COUNSEL, ACCOUNTANTS AND APPRAISER | | 16 |
| **IX.** | | **ADVERSARY PROCEEDINGS** | | 16 |
| **X.** | | **POST CONFIRMATION OPERATIONS** | | 17 |
| | A. | OPERATION AND MANAGEMENT | | 17 |
| | | 1. Management of the Reorganized Debtors | | 17 |
| | | 2. Meeting of Directors | | 17 |
| | | 3. Operations | | 17 |
| | B. | FINANCIAL PROJECTIONS AND PLAN FUNDING | | 17 |
| | | 1. | Projections | 17 |
| **XI.** | | **ACCEPTANCE AND CONFIRMATION** | | 17 |
| | A. | FEASIBILITY | 17 | |
| | | 1. | Description of each Debtor's Assets | 17 |

       B.      BEST INTERESTS OF CREDITORS AND
               LIQUIDATION ANALYSIS                                      18

       C.      CONFIRMATION OVER DISSENTING CLASSES                      18

**XII.      ALTERNATIVE TO THE PLAN**                                    19

**XIII.   RECOMMENDATION OF PROPONENTS**                                 19

## I. INTRODUCTION

This Disclosure Statement is being submitted by Arizona Environmental Recycling, L.L.C., (hereinafter "AER") an Arizona limited liability company and N-Route, L.L.C. (hereinafter "N-Route") (the "Debtors"). AER filed a voluntary petition under Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the District of Arizona on February 1, 2010. N-Route filed for bankruptcy on March 13, 2009. These cases were Ordered Jointly Administered on November 10, 2009. Debtors' Joint Plan of Reorganization (the "Plan") is attached to this Disclosure Statement as Exhibit "A".

The effective date is defined as 90 days after entry of an Order confirming the Joint Plan.

**THE DISCLOSURE STATEMENT IS NOT THE PLAN. THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN ATTACHED HERETO, SHOULD BE READ IN ITS ENTIRETY. FOR THE CONVENIENCE OF CREDITORS AND STOCKHOLDERS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.**

This Disclosure Statement is submitted in accordance with Section 1125 of the Code, for the purpose of soliciting acceptance of the Plan from Holders of certain classes of claims and interests. The Disclosure Statement cannot be used for that purpose, however, until the Court determines that the Disclosure Statement contains adequate information to permit claimants, whose acceptance of the Plan is solicited, to make an informed judgment in voting to accept or reject the Plan. The Bankruptcy Court approved this Disclosure Statement on

_____, as containing information of a kind and in sufficient detail, adequate to enable a hypothetical, reasonable investor or creditor typical of each of the Classes being solicited to make an informed judgment whether to vote to accept or to reject the Plan. The only claimants whose acceptance of the Plan is sought are those whose claims or interests are "impaired" by the Plan, or in other words, those whose claims or interests are altered or who will not receive the allowed amount of their claim in cash pursuant to the original terms of their agreements. Holders of claims or interests which are not "impaired" are deemed to have accepted the Plan.

The Plan is proposed as a Chapter 11 Plan for each Debtor, Arizona Environmental Recycling, L.L.C and N-Route, L.L.C which provides for payment, in whole or in part, of the Allowed Amount of a Creditor's Claim. If the Plan is rejected by one or more impaired classes of claims or interests held each Debtor's creditors, the Plan or a modification thereof may still be confirmed by the Court at the request of each Debtor, if the Court determines, among other things, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class or classes of claims or interests impaired by the Plan. Each Debtor requests such a determination, if the Plan is not accepted by one or more of the impaired classes of claims or interests.

## II.    **VOTING**

If you are one of the classes of creditors whose interests are affected by the Plan (see "Summary of the Plan"), it is important that you vote. If you fail to do so, your rights may be jeopardized.

To vote to accept or reject the Plan, creditors of each Debtor in any of the impaired classes should indicate their acceptance or rejection on the ballot.

A Class of Claims will have accepted the Plan, if it is accepted by creditors holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such class voting on the Plan, for each Debtor.

Executed ballots must be received prior to _____. The original Ballots should be mailed to:

> Dean W. O'Connor, Esq.
> Sallquist, Drummond & O'Connor
> 1430 E. Missouri Ave
> Suite B-125
> Phoenix, Arizona 85014

Since mail delays may occur, it is important that the ballot or ballots be mailed or delivered well in advance of the date specified. Ballots received after this date may not be included in the calculation to determine whether Debtor's creditors have voted to accept or reject the Plan.

No representations or assurances concerning Debtor are authorized by Debtor other than as set forth in this Disclosure Statement.

**THE BANKRUPTCY COURT WILL SET A BAR DATE FOR FILING PROOFS OF CLAIMS AGAINST THE DEBTOR. CLAIMS MUST HAVE BEEN FILED, IF AT ALL, BEFORE THAT DATE TO BE TREATED UNDER THE PLAN IF NOT SCHEDULED BY THE DEBTOR OR OTHERWISE DEEMED ALLOWED.**

### III.   REPRESENTATIONS

Certain materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While every effort has been made to retain the meaning of such instruments, you are urged to rely upon the contents of such instruments only, and only upon a thorough review of the instruments themselves.

45011.00000.55

NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR INCLUDING, WITHOUT LIMITATION, THE VALUE OF PROPERTY, ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THIS IS A SOLICITATION BY THE DEBTOR ONLY AND IS NOT A SOLICITATION BY THE DEBTOR'S ATTORNEYS OR ACCOUNTANTS, AND THE

REPRESENTATIONS MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF THE DEBTOR'S ATTORNEYS OR ACCOUNTANTS, EXCEPT AS OTHERWISE INDICATED. REASONABLE EFFORTS HAVE BEEN MADE TO PREPARE ALL UNAUDITED FINANCIAL INFORMATION WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPALS; HOWEVER, AS TO ALL FINANCIAL INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE ACCURACY OF THE INFORMATION CONTAINED THEREIN TO BE WITHOUT ERROR.

THE LIQUIDATION ANALYSIS CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT OR EXAMINATION BY INDEPENDENT CERTIFIED

PUBLIC ACCOUNTANTS. RECORDS SUBSEQUENT TO THE FILING OF THE PETITION FOR REORGANIZATION HAVE BEEN KEPT BY THE DEBTOR AND MONTHLY FINANCIAL REPORTS HAVE BEEN SUBMITTED BY THE DEBTOR TO THE COURT SINCE THE FILING OF THE PETITION.

THE SOURCES FOR INFORMATION FOR ALL THE MATTERS AND DISCLOSURES MADE IN THIS DISCLOSURE STATEMENT OR THE DEBTOR, OR THE DEBTORS SCHDULES, AND INFORMATION FILED IN THE BANKRUPTCY CASE.

ANY INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE BANKEUPTCY COURT DOES NOT WANT SUCH INFORMATION TO BE TRUE THROUGH IT'S APPROVAL OF THE DISCLOURE STATEMENT. ANY AND ALL REPRESENTATIONS AND INOFORMATION CONTAIN IS INFORMATION AND REPRESENTATIONS MADE SOLELY BY THE DEBTOR WITH THE ASSISTANCE OF COUNSEL.

IV.     DEFINITIONS

Unless otherwise defined in the Joint Plan or this Joint Disclosure Statement and the Exhibits hereto, the terms used in this Disclosure Statement shall have the same meaning as in the Bankruptcy Code or the Bankruptcy Rules.

V.     SUMMARY OF PLAN

The following is a brief summary of certain provisions of the Plan and should not be relied upon for voting purposes. The summary does not purport to be complete.

**CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN IN FULL. CREDITORS AND INTEREST HOLDERS ARE FURTHER URGED TO CONSULT WITH COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN.**

A.      OVERVIEW OF THE PLAN.

Debtor's Plan of Reorganization ("Plan") is summarized as follows:

B.-1     TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR ARIZONA ENVIRONMENTAL RECYCLING, L.L.C.

1.      Administrative Expenses, Fees and Charges Specified in Section 507(a) (2).

Holders of Allowed Administrative and Priority Claims specified in Section 507 (a) (2) shall be paid in cash to the extent funds are available upon the Effective Date of the Plan in an amount equal to the pro rata share of allowed amount of such claims, except to the extent that the holder of a particular Allowed Administrative Claim has agreed to a different treatment. Allowed Administrative Claims against Debtor will be paid from cash within 60 days of the effective date, or based on the pro rata share of distributions made by the Debtor as the funds are available from liquidation of assets. The Debtor estimates that Section 507(a)(2) Allowed Administrative Claims against the Debtor aggregate, approx $15,000.00 as attorneys fees. In addition, the office of the United States Trustee will receive a quarterly fee ranging from $325.00 to $975.00 depending on the amount of money to be disbursed from the estate during the quarter.

2.      Allowed Claims Entitled to Priority under Section 507(a) (8).

The Holders of Allowed Claims against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code may be paid if funds are available, a pro rata share  on

1 | the Effective Date of such total allowable claims or as funds are available, pro ratably such

2 | amounts that are available, or at the election of the Reorganized Debtor, in deferred payments

3 | within six (6) years from the date of their assessment. In the event deferred payments are made

4 | over a six (6) year period, such Allowed Claims will accrue interest from the Effective Date at

5 | the Legal Rate and such accrued interest, with any remaining principal balance, shall be paid in

6 | full no later than six (6) years following the date of assessment of such Allowed Claims. In the

7 | event that the Reorganized Debtor determines to make monthly or quarterly payments, all such

8 | payments shall begin within the first quarter after Plan confirmation. Debtor estimates the sum

9 | of $129,418.00 as Allowed Claims entitled to priority under Section 507(a)(8), representing taxes

10 | owed to the IRS by AER. Any liens held by any State or taxing authority shall remain in full

11 | force and effect until the amount of that claim is paid in full by the Reorganized Debtor.

12 |     3.   Allowed Claims Entitled to Priority Under Sections 507(a) (3-6).

13 |     After payment of Allowed Secured Claims and Allowed Administrative

14 | Claims specified in § 507(a)(2) of the Bankruptcy Code, Allowed Claims entitled to priority

15 | under Sections 507(a), (3), (4), (5), (6) and (7) of the Bankruptcy Code, if any, shall be paid in

16 | full and in cash on the Effective Date. The Debtor is not aware of any allowed claims under

17 | those sections.

18

19

20

21

22

23

C.-1  TREATMENT OF CLASSIFIED CLAIMS AGAINST THE DEBTORS ARIZONA ENVIRONMENTAL RECYCLING, L.L.C.

1. Claim Amounts.

Because certain of the Claims against the Debtors are in unknown or undetermined amounts, the amounts of Claims specified in this Disclosure Statement reflect only the Debtors' best estimates as of the date hereof.

2. General Provisions Applicable to all Allowed Claims and Interests.

All Classes of Allowed Claims and Allowed Interest shall receive the distributions set forth in this Article on account of and in complete satisfaction of all such Allowed Claims, with interest accrued thereon, if any, and in complete satisfaction of all such Allowed Interests. Without limiting the foregoing, upon the Effective Date, each holder (and each successor of a holder) of an Allowed Claim or Allowed Interest against the Debtor shall be deemed to have waived, relinquished and released any and all of their rights and claims, (except as provided in the Plan or the Confirmation Order) against the Debtor.

Each holder of an Allowed Claim against Debtor arising from a claim held by or a judgment rendered in favor of such Creditor for reimbursement, indemnification, contribution or subrogation against the Debtor, shall be deemed fully satisfied with respect to the Debtor upon Consummation of the Plan. Allowed Claims, together with any interest thereon, of all impaired Classes of creditors shall be deemed fully satisfied by the distributions provided in the Plan.

3. Treatment of Allowed Claims and Allowed Interest against Debtors.

a. Class 1 – Allowed Secured Claim - of M& I Bank. (impaired)

(M&I Marshall and Ilsley Bank) "M&I's" secured claim of approximately $666,519.52, will be paid in accordance for the Forbearance Agreement entered into between

Arizona Environmental Recycling and M&I Bank in December of 2009. All terms and conditions of that Forbearance Agreement shall apply as to the treatment of M&I Bank's claim under this Joint Plan of Reorganization. Should there be any terms in this Plan inconsistent with the Forbearance Agreement, the provisions of the forbearance agreement will be controlling. The general provisions for payment to M&I in that agreement are set forth as follows:

Arizona Environmental Recycling will pay M&I Bank the sum of $10,000.00, per month on the 15th day of each calendar month commencing December 15, 2009. The monthly payment will increase to $12,500.00, on the first anniversary date December 15, 2010. Thereafter the monthly payment will increase to $15,000.00 per month on the second anniversary December 15, 2011 and the remaining balance will be fully due and payable December 14, 2012. A copy of the forbearance agreement with M&I bank is attached hereto as Exhibit "B".

     b.  <u>Class 2 – US Bancorp – Secured Claim.</u> . (impaired)

US Bancorp will continue to have a secured claim. The principal of the claim will be reduced to $48,000 payable over 15 years with interest at 7% until paid. The remaining claim of US Bancorp will be treated as an unsecured claim under Class 4 below. The claim of US Bancorp is against AER and is impaired.

     c.  <u>Class 3 – Administrative Convenience – Unsecured Creditors Under $1,000 Against AER.</u>

Allowed unsecured claims of $1,000 or less will be paid 75% of the allowed claim without interest within 180 days of the effective date, unless the creditor prior to confirmation elects to be included in Class 4 below.

        d.     Class 4 – Allowed Claims of Non-Insider General Unsecured Creditors (Unimpaired).

This Class consists of general allowed unsecured claims of the Debtor AER. The Debtor general allowed unsecured secured claims against AER are estimated to be in the approximate amount of $440,000. The allowed unsecured claims against AER will be paid in full in the allowed amount without interest in annual payments commencing one year after the effective date, to be paid over a period of 15 years.

IN-LAWS L.L.C Disputed Claims:

IN-LAWS, L.L.C has filed an objection to AER's Disclosure Statement and is anticipated to file an objection to the Debtor's plan. The Debtor AER asserts that IN-LAWS, L.L.C claim will be disallowed and therefore will not be treated as an unsecured claim. If allowed to the extent it is allowed it will be treated in this class. IN-LAWS L.L.C asserts a claim in excess of $500,070.00 based on a lease agreement entered into by Debtor Arizona Environmental Recycling prior to the commencement of this case.

IN-LAWS L.L.C has also filed a claim for administrative expenses and other rent charges pursuant to 11 U.S.C § 365 (d)(3)(2) and to compel the Debtor for immediate payment of an administrative expense. A copy of the Petition is filed with the Court and appears as docket No. 153. The Debtor has filed a Response to that Motion/ Petition which is filed April 6, 2010, as docket number 156 for a copy of the Debtor's Response is attached hereto as Exhibit "C". Debtor asserts that based on impossibility and other defenses that the claim of IN-LAWS L.L.C will be disallowed. Debtor intends to file an adversary complaint pursuant to 11 U.SC § 502 to determine IN-LAWS L.L.C's claims. To the extent the claim of IN-LAWS L.L.C is allowed as an administrative expenses or a general unsecured claim, the unsecured claim of IN-LAWS

L.L.C as allowed will be paid pursuant to this class. To the extent any administrative expenses of IN-LAWS L.L.C are allowed, they will be paid as an allowed administrative expense claim as provided for under § 5 Summary of Plan, § B-1 (1).

    e.  Class 5 – TCF Financing, Inc. Claim. (impaired)

    TCF Financing, Inc's will be paid 1,027.64 per month after arrearages are paid pursuant to the stipulated order granting relief from the automatic stay filed September 17, 2009 in this case as docket No. 84, which terms and conditions are incorporated as part of this plan.

    f.  Class 6-Toyota Motor Credit Corporation. (impaired)

    Toyota Motor Credit Corporation's lease will be assumed as to a gas powered forklift. The diesel powered forklift will be surrendered. Payments to this creditor will be as agreed in the Stipulated Order Confirming Plan or a Stipulated Order filed prior to confirmation of this Plan.

    g.  Class 7– Other Allowed Secured Claims.

    Any other allowed secured claims based upon proofs of claims timely filed, will be paid at the interest rate of 7%, over a period of 15 years in monthly payments.

    h  Class 8– Interest Holders

    The principal of the Debtor AER is Matthew Hinson holding 100% of all outstanding interest.  Mr. Hinson will pay a minimum of $20,000 to retain his interest in AER.

    i.  Class 9- Maricopa County Treasurer

    Maricopa County Treasurer is a secured tax lien creditor whose tax lien is secured under A.R.S § 42-17153.

1    A.R.S § 42-17153, makes Maricopa County secured liens prior and superior to

2    any other liens or encumbrances or claimants in this bankruptcy case against property owned by

3    the Debtor.

4    Maricopa County secured claims bare interest at the statutory rate of 16% per

5    anthem, pursuant to 11 U.S.C § 511 and A.R.S § 42-108.53.

6    Maricopa County has filed a proof of claim which will be allowed in that amount

7    of $9,094.47 for unpaid Pre-Petition personal property taxes for the tax years of 2008 and 2009

8    un-liquidated tax lien central interest on parcel No. 915-48-249.

9    Additionally Maricopa County has a second proof of claim No. 19 filed May 1,

10   2009, in the amount of $26,052.74 for unpaid Pre-Petition real property taxes for the years 2008

11   and 2009.

12   Maricopa County claims therefore will be treated as follows:

13   The Pre-Petition secured real and personal property tax claims of Maricopa

14   County tax claims that are currently due and owing will be paid in full on the effective date,

15   together with an accruing Post-Petition interest at the statuary rate of 16% per anthem (the

16   "statuary rate") to extent the tax claims are not paid-in-full on the effective date, Debtor shall

17   make regular installments payments in accordance with 11 U.S.C § 1129 (a)(9)(D) of a period no

18   longer than 5 years commencing with the Petition date and interest paid a the statuary rate until

19   the claims are paid in full. Any real and or personal property taxes have become due and payable

20   Post-Petition shall be paid in the ordinary course of the Debtors business with interest accruing at

21   the statuary rate if not timely paid.

22

23

B-2    TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR
N-ROUTE, L.L.C.

       1.    Administrative Expenses, Fees and Charges Specified in Section Section 507(a) (2).

Holders of Allowed Administrative and Priority Claims specified in Section 507 (a) (2) shall be paid in cash to the extent funds are available upon the Effective Date of the Plan in an amount equal to the pro rata share of allowed amount of such claims, except to the extent that the holder of a particular Allowed Administrative Claim has agreed to a different treatment. Allowed Administrative Claims against Debtor will be paid from cash within 60 days of the effective date, or based on the pro rata share of distributions made by the Debtor as the funds are available from liquidation of assets. The Debtor estimates that Section 507(a)(2) Allowed Administrative Claims against the Debtor aggregate, $10,000.00 against N-Route. In addition, the office of the United States Trustee will receive a quarterly fee ranging from $325.00 to $975.00 depending on the amount of money to be disbursed from the estate during the quarter.

       2.    Allowed Claims Entitled to Priority under Section 507(a) (8).

The Holders of Allowed Claims against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code may be paid if funds are available, a pro rata share on the Effective Date of such total allowable claims or as funds are available, pro ratably such amounts that are available, or at the election of the Reorganized Debtor, in deferred payments within six (6) years from the date of their assessment. In the event deferred payments are made over a six (6) year period, such Allowed Claims will accrue interest from the Effective Date at the Legal Rate and such accrued interest, with any remaining principal balance, shall be paid in full no later than six (6) years following the date of assessment of such Allowed Claims. In the

event that the Reorganized Debtor determines to make monthly or quarterly payments, all such payments shall begin within the first quarter after Plan confirmation. Debtor estimates the sum of $70,404.00 by N-Route to the IRS. Debtor estimates $12,272.00 is owed to Arizona Department of Revenue by N-Route. Any liens held by any State or taxing authority shall remain in full force and effect until the amount of that claim is paid in full by the Reorganized Debtor.

        3.     Allowed Claims Entitled to Priority Under Sections 507(a) (3-6).

After payment of Allowed Secured Claims and Allowed Administrative Claims specified in § 507(a)(1) of the Bankruptcy Code, Allowed Claims entitled to priority under Sections 507(a), (3), (4), (5), (6) and (7) of the Bankruptcy Code, if any, shall be paid in full and in cash on the Effective Date. The Debtor is not aware of any allowed claims under those sections.

C-2.    TREATMENT OF CLASSIFIED CLAIMS AGAINST THE DEBTOR N-ROUTE, L.L.C.

        1.     Claim Amounts.

Because certain of the Claims against the Debtors are in unknown or undetermined amounts, the amounts of Claims specified in this Disclosure Statement reflect only the Debtors' best estimates as of the date hereof.

        2.     General Provisions Applicable to all Allowed Claims and Interests.

All Classes of Allowed Claims and Allowed Interest shall receive the distributions set forth in this Article on account of and in complete satisfaction of all such Allowed Claims, with interest accrued thereon, if any, and in complete satisfaction of all such Allowed Interests. Without limiting the foregoing, upon the Effective Date, each holder (and each successor of a holder) of an Allowed Claim or Allowed Interest against the Debtor shall be deemed to have

1  waived, relinquished and released any and all of their rights and claims, (except as provided in
2  the Plan or the Confirmation Order) against the Debtor.

3  Each holder of an Allowed Claim against Debtor arising from a claim held by or a
4  judgment rendered in favor of such Creditor for reimbursement, indemnification, contribution or
5  subrogation against the Debtor, shall be deemed fully satisfied with respect to the Debtor upon
6  Consummation of the Plan. Allowed Claims, together with any interest thereon, of all impaired
7  Classes of creditors shall be deemed fully satisfied by the distributions provided in the Plan.

8      3.      Treatment of Allowed Claims and Allowed Interest against Debtors.

9          a.      Class A – Allowed Secured Claim - of M& I Bank.

10          (M&I Marshall and Ilsley Bank) "M&I's" secured claim of approximately
11  $98,300.57, will be paid in accordance for the Forbearance Agreement entered into between N-
12  Route, L.L.C. and M&I Bank in December of 2009. All terms and conditions of that Forbearance
13  Agreement shall apply as to the treatment of M&I Bank's claim under this Joint Plan of
14  Reorganization. Should there be any terms in this Plan inconsistent with the Forbearance
15  Agreement, the provisions of the forbearance agreement will be controlling. The general
16  provisions for payment to M&I in that agreement are set forth as follows:

17  N-Route, L.L.C. will pay M&I Bank the sum of $1,500.00, per month on the 15th day of
18  each calendar month commencing December 15, 2009. The monthly payment will increase to
19  $2,000.00 per. month, on the first anniversary date December 15, 2010. Thereafter the monthly
20  payment will increase to $2,500.00 per month on the second anniversary December 15, 2011 and
21  the remaining balance will be fully due and payable December 15, 2012. A copy of the
22  forbearance agreement with M&I bank is attached hereto as Exhibit "C".

23

b.      Class 2 – DCF USA; L.L.C. (Chrysler Financial) (impaired)

Chrysler Financial will have an allowed secured claim in the amount of $50,000.00, the value of its collateral, 2005 Freightliners Class M-2, payable with interest at 10.75%. in monthly payments of $1080.90/month over 5 years starting the effective date.

c.      Class B – Administrative Convenience – Unsecured Creditors Under $1,000 Against N-Route. (impaired)

Allowed unsecured claims of $1,000 or less will be paid 75% of the allowed claim without interest within 180 days of the effective date, unless the creditor prior to confirmation elects to be included in Class 4 below.

d.      Class C – Allowed Claims of Non-Insider General Unsecured Creditors (impaired).

This Class consists of general allowed unsecured claims of the Debtor N-Route. These claims are estimated to be in the approximate amount of $212,000. The unsecured claims against N-Route will be paid 10% of the allowed claim in annual payments over a period of 15 years without interest commencing one year after the effective date.

e.      Class D – MVP – Secured Claim.

MVP has an interest in containers. The claim of MVP is approximately $93,000 will be paid pursuant to contract. This Class is unimpaired by N-Route.

f.      Class E – ORIX – Lease Claim.

ORIX will be paid pursuant to the Stipulated Order entered with payments of $2335.24/ month under the terms of the Stipulation filed in this case, which terms and stipulations are incorporated into this plan.

g.      Class F – Key Equipment Finance Inc. (Lease)

Key Equipment Finance will be paid pursuant to the Stipulated Order filed in this case which terms and provisions are incorporated into this plan.

i.      Class G – Interest Holders

The principals of N-Route are Matthew Hinson fifty-percent (50%) and Robert Mills (50%). Each will pay $10,000 over the life of the plan, to retain their ownership interest in this Debtor.

D.      SUMMARY OF OTHER PROVISIONS OF THE PLAN.

1.      Release of Liens and Interests.

Unless otherwise provided in the Plan or in the order confirming the Plan, all creditors possessing Allowed Secured Claims shall retain their liens on any of their collateral the Reorganized Debtor acquires as the result of confirmation of the Plan to secure payment of all cash or other property to be distributed to them on account of those liens pursuant to the terms of the Plan. Such liens on the Reorganized Debtor's property shall be deemed relinquished and reconveyed to the Reorganized Debtor upon the payment to the holders of such liens of all money or property due them in satisfaction of their Allowed Secured Claims according to the terms of the Plan.

2.      Stay and Enforcement of Plan.

The automatic stay of § 362(a) of the Bankruptcy Code shall terminate when all orders necessary to the confirmation of the Plan become Final Orders.

Although confirmation of the Plan may not discharge the Debtor pursuant to Section 1141 of the Bankruptcy Code, the Reorganized Debtor is only assuming the obligations set forth in this Plan in the amounts so specified herein and the Reorganized Debtor

1    is only obligated and liable to make payment of such amounts in the manner set forth by and

2    pursuant to the terms of the Plan. The Reorganized Debtor is not liable to any holders of

3    Allowed Claims and Allowed Interests except as specifically provided for by the terms of the

4    Plan when confirmed by Order of the Bankruptcy Court.

5           3.    Injunction.

6           The Confirmation Order shall provide and shall operate as a permanent

7    injunction against the commencement or continuation of any civil action, deed of trust sale,

8    recovery or offset against the Debtor's or their Estates, except and as otherwise permitted by this

9    Plan or an order of the Bankruptcy Court. The Bankruptcy Court shall have jurisdiction to

10   determine and award damages for any violation of the injunction provided for in this Plan or

11       the Confirmation Order, including, but not limited to, compensatory damages,

12   professional fees and expenses, and exemplary damages for any willful violation of said

13   injunction.

14           4.    Disputed Claims and Appeals.

15           Where timely objections are made to any Claim in any Class, to any

16   Priority Claim, or to any Claim for administrative expenses, or any motions or proceedings are

17   filed in regard to any lien, claim or privilege, any cash payments due such Claimant shall be held

18   by the Reorganized Debtor in a separately segregated interest bearing bank account, subject to

19   the Bankruptcy Court's jurisdiction. For purposes of distribution to creditors, calculations shall

20   be made as if Disputed Claims become an Allowed Claim. Distributions shall be made to the

21   holder of such claim to the extent such distributions have already been made to Holders of

22   Allowed Claims generally, if the objection to the Claim is overruled and the disputed claim

23

1    7.    Retention of Jurisdiction.

2            Following confirmation of the Plan, the Bankruptcy Court shall retain, without

3    limitation, jurisdiction for the following purposes and to provide any relief the Reorganized

4    Debtor may require to effectuate the Plan or any modification of the Plan:

5            a.    Deciding the proper classification of any claim, determining the

6    proper allowance for purposes of distribution of claims estimated for purposes of voting, and

7    resolving objections to claims;

8            b.    Resolving all disputes regarding title to assets of the Reorganized

9    Debtor and all disputes arising under the Bankruptcy Code;

10           c.    Correcting of any defect, curing any omission, or reconciling any

11   inconsistency between the Plan and the order confirming the Plan as may be appropriate to

12   effectuate the purposes and intent of the Plan;

13           d.    Modifying the Plan after confirmation;

14           e.    Enforcing and interpreting the terms and conditions of the Plan,

15   any securities issued under the Plan, or any other documentation effectuating the Plan;

16           f.    Entering any order required to enforce the rights and powers of the

17   Reorganized Debtor;

18           g.    Determining any claim entitled to priority under Section 507 of the

19   Bankruptcy Code; and

20           h.    Entering any order required to close the Debtor's case.

21   8.   Effect of Confirmation.

22           When all orders necessary to confirmation of the Plan become Final Orders, the Plan

23   shall bind the Debtor, the Reorganized Debtor, all entities that are to acquire any property under

becomes an Allowed Claim. The lease of the Mini Mart Speedy Food-N-Gas L.L.C will be assumed.

5. <u>Lease and Executory Contracts</u>.

Certain leases have been assumed by the Debtor during the administration of the case. All leases assumed will be assumed for purposes of confirmation. Any leases not assumed previously in the case are deemed rejected, if not already rejected by formal order of the court.

6.    <u>Tax Considerations</u>.

The Debtor does not know of and shall not make any representations about any possible tax consequences that may affect creditors. Federal income tax consequences may result to particular creditors. Certain types of creditors may be subject to special rules that cannot be addressed herein. There may also be state, local or foreign tax considerations applicable to each creditor. The 2005 amendments to the bankruptcy code amended § 1125 of the code to require discussion by the Plan proponent of the federal tax consequences of the Plan. Debtor believes that the Plan if confirmed will not have any significant tax consequences on the Debtor entities. However each claimant against each Debtor should consult with a tax professional to determine whether or not treatment under the plan will have any tax implication to each individual claimant.

**EACH CREDITOR IS URGED TO CONSULT HIS OR HER OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN FOR HIM, HER OR IT UNDER FEDERAL, STATE AND LOCAL TAX LAW.**

the Plan, all Creditors, and all holders of Interests, whether or not their Claims and Interests are impaired under the Plan and whether or not they have accepted the Plan, as determined by Section 1141(a) of the Bankruptcy Code.

This means, in part, that, except as provided by an express order of the Bankruptcy Court or pursuant to the terms of the Plan or the order confirming the Plan, all judicial, administrative or other actions or proceedings pending against the Debtor or arising out of Claims accrued prior to the confirmation of the Plan shall be permanently enjoined.

The Plan shall not affect the liability of any person or entity other than the Debtor on or for debts or obligations to Creditors.

## VI.    HISTORICAL BACKGROUND

### A.    CURRENT BUSINESS

1.    Nature of Operation.

A.    PRE-PETITION OPERATIONS.

AER was formed in 9/8/98. At the time it had operations in three locations throughout the valley. AER operates a recycling center for recycling of aluminum, copper and other metals.

N-Route, Inc. was originally formed in 7/8/00 for the purposes of transporting metals and other materials for AER as well as the general public. N-Route provides cross-country transportation shipping and handling throughout the forty-eight states.

### B. INCOME OF THE DEBTORS.

AER and N-Route have filed monthly operating reports as required by the Bankruptcy Code. The reports are available upon request of counsel or by visiting the Bankruptcy Court's web site.

C.  CURRENT BUSINESS OF THE DEBTOR

The current business operations of the Debtor going forward will remain the same as the pre-petition operations. Projected Monthly Operating Income and Expenses (Budget) for A.E.R and N-Route, Inc. are attached as Exhibit "D" and "E".

D.  REPORTS  CONFIRMATION  MANAGEMENT  OF  THE  DEBTORS  – FOLLOWING CONFIRMATION: The following officers of the Debtors will be as follows:

AER – Matthew Hinson – President and sole owner

N-Route – Robert Mills – 50% and Matthew Hinson, President 50%.

## VII.  **DEBTOR'S REASON FOR FILING ITS PETITION FOR REORGANIZATION**

The Debtors filed for relief under Chapter 11 of the United States Bankruptcy Code primarily because of threatened pending lawsuits for nonpayment of certain claims, of M & I Bank and other secured lenders and Leasing Companies. Debtors attribute the loss in income is primarily due to the drop in the value of aluminum in approximately October of 2008, and also problems with competition by other recyclers that transport the aluminum outside of the state of Arizona, particularly in California to take advantage of higher aluminum prices and fees, resulting in loss of revenue in late 2008 until the date of the filing of this case.

## VIII.  **EVENTS FOLLOWING THE FILING OF THE BANKRUPTCY PETITION**

A.  EMPLOYMENT OF COUNSEL, ACCOUNTANTS AND APPRAISER.

Dean W. O'Connor, of Sallquist, Drummond & O'Connor applied for appointment and has been appointed as counsel for the Debtors.

B.    **CASH COLLATERAL ISSUES ARIZONA ENVIRONMENTAL RECYCLING AND N-ROUTE.**

M&I Bank filed a Motion to sequester cash collateral and to prohibit Debtor's use of cash collateral on 6/8/09 at docket number 56. The Debtor Arizona Environmental Recycling filed a Response to the Motion and a hearing on the use Motion for use of cash collateral was initially heard jointly with M&I Banks Petition for Order to show cause why the case should not be converted to chapter 7 on July 15, 2009. The hearing was continued and heard again on July 21, 2009. M&I and the Debtor AER then filed the first Stipulated Order on Motion to Sequester Cash Collateral on 7/24/09.

M&I Bank then filed a Notice of Default regarding use of cash collateral on 10/22/09, docket No. 90 and a certificate regarding Debtors failure to cure 11/4/09. Debtor believed it was current on the payments and resolved the issues with M&I by way of the Forbearance Agreements attached hereto as Exhibit "B" on AER and N-Route. M&I then filed a renewed Motion to Convert and a Response was filed by the Debtor on 2/23/10. The Debtor has entered into an understanding and agreement with M&I such that the renewed Motion to convert to Chapter 7 will be withdrawn subject to and including the treatment of M&I Bank's claims in this Joint Plan of Reorganization.

IX.    **ADVERSARY PROCEEDINGS**

None.

X.    **POST CONFIRMATION OPERATIONS**

A.    OPERATION AND MANAGEMENT.

1. Management of the Reorganized Debtors.

The management of the reorganized Debtors will not change. Matthew Hinson will remain as President of both AER and N-Route, L.L.C.

2.    Meetings of Directors

Following the Effective Date of the Plan, the manager and members of the Reorganized Debtor shall meet annually or more frequently. The initial group shall serve until the next annual meeting of the manager and members held pursuant to the articles of incorporation and/or bylaws of the Reorganized Debtor.

3.  Operations - POST CONFRIMATION OPERATIONS

Theses Debtors intend to move forward and continue there operation similar to the operation to filing bankruptcy. Each Debtor has conducted a thrall analysis of their liabilities and have instituted efforts to cut cost of operations including down sizing as far as number of employees, other operating expenses in order to make each Debtor profitable and increase profitability during the course of this chapter 11 case, certain leases have been rejected resulting in reductions in month operating cost.

B.    FINANCIAL PROJECTIONS AND PLAN FUNDING.

1.    Projections. The Reorganized Debtor believes that income generated by the Debtors will be sufficient to fund the joint plan. Protection of income and expenses for the year 2010, are attached hereto as Exhibits "D" and "E".

XI.    **ACCEPTANCE AND CONFIRMATION**

A.    FEASIBILITY.

1.    Description of Debtor's Assets.

The assets of the Debtor are listed on the Debtor's schedules filed with the Court. The Debtor has actively continued the management of its assets since filing the

Petition. Debtors' assets have been reevaluated as is reflected in the Liquidation Analysis attached to the Disclosure Statement as Exhibits "C". Thus, the description of the assets owned by the Debtor as reflected in original schedules filed in this proceeding may vary substantially from the assets currently owned by the Debtor.

B.    BEST INTERESTS OF CREDITORS AND LIQUIDATION ANALYSIS.

Debtor's believe it is in the best interest of creditors to vote for the Plan because creditors will receive more than they should receive if these entitles were liquidated under a Chapter 7 case. (See liquidation analysis, Exhibit "F"& "G".

C.    CONFIRMATION OVER DISSENTING CLASSES.

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired Classes, so long as at least one impaired Class of Claims has accepted it. These "cram-down" provisions for confirmation of a plan despite the non-acceptance of one or more impaired Classes of Claims or interests are set forth in Section 1129(b) of the Bankruptcy Code.

If a Class of Claims rejects the Plan, the Plan may still be confirmed so long as the Plan does not discriminate unfairly as to a Class and is "fair and equitable" to such Class under Section 1129(b) of the Bankruptcy Code and applicable case law. Section 1129(b) of the Bankruptcy Code states that the "fair and equitable" standard may require, among other things, that the Plan provide (i) that the lien securing the Claims of members of the Class is to be left in place and the Holders of the Claims will receive deferred cash payments of a present value equal to the lesser of the amount of such Claims or the value of the collateral securing such Claims; (ii) that the collateral securing the Claims be sold free of the lien with the lien attaching to the proceeds and with such lien on the proceeds being treated under one of the two other standards

described in this paragraph; or (iii) a treatment for the Claim that is the "indubitable equivalent" of the Claim. The Debtor believes that the Plan satisfies this test and therefore that the Plan can be confirmed even if it is rejected by Holders of Secured Claims.

If a Class of Unsecured Claims rejects the Plan, the Plan may still be confirmed so long as the Plan is not unfairly discriminatory as to that Class and is "fair and equitable" to such Class. Under Section 1129(b) of the Bankruptcy Code, a Plan is "fair and equitable" as to a Class if, among other things, the Plan provides that (i) each holder of a Claim included in the rejecting Class receive or retain on account of that Claim property which has a value, as of the Effective Date, equal to the allowed amount of such Claim; or that (ii) the holder of any Claim or interest that is junior to the Claims of such Class will not receive or retain on account of such junior Claim or interest any property at all, unless the junior Claim or interest holder is making a substantial new contribution to the Debtor. Therefore, the Debtor believes the Plan could be confirmed even if it is rejected by one or more Classes of Claims as long as at least one impaired Class accepts the Plan.

## XII.   **ALTERNATIVES TO THE PLAN**

The only alternative to the Plan would be a conversion of this estate to a Chapter 7 proceeding which would have the effect of increasing the administrative expenses charged to this estate thereby reducing the monies available to satisfy creditor's claims. In addition, Liquidation would eliminate Debtor's future income as a source of payment of Creditor's Claims. The Liquidation Analysis attached to Debtor's Disclosure Statement as Exhibit "B" reflects that creditors would receive nothing in the event of liquidation.

1

## XIII.   **RECOMMENDATION OF PROPONENTS**

2        The Debtor believes that its Plan of Reorganization is in the best interest of all

3   Creditors of this estate and therefore recommends that all Creditors vote to accept the Plan

4   because it presents the best alternative to Creditors to realize the full payment of their Allowed

5   Claims.  If the Plan is not approved, this Chapter 11 proceeding would most likely be converted

6   to a Chapter 7 proceeding which would only add additional administrative fees as an additional

7   burden on the proceeds to be received from the liquidation of the Assets, thus reducing the values

8   to be received by Creditors.  In addition, conversion of this estate to a Chapter 7 proceeding

9   would require that the Trustee appointed in the Chapter 7 proceeding attempt to liquidate the

10   Debtor's Assets without the knowledge and background as to the nature of those assets.

11   Liquidation would result in Unsecured Creditors receiving nothing on their Allowed Claims,

12   which is significantly less than the payments proposed by Debtor's Plan.  Thus, the Debtor

13   believes that the acceptance of the Plan is the preferable alternative for all Creditors and Debtor

14   urges all Creditors to vote to accept the Debtor's Plan.

15        **RESPECTFULLY SUBMITTED** this 21st day of April, 2010.

16                                         Dean W. O'Connor PC

17                                         \s\ Dean W. O'Connor

18                                         Dean W. O'Connor

19

20

21

22

23

# CERTIFICATE OF SERVICE

**ORIGINAL** of the foregoing filed ECF on this 21st day of April, 2010 with:

**The United States Bankruptcy Court**
230 North First Avenue
Phoenix, AZ 85003

**COPIES** of the foregoing mailed on the 21st day of April, 2010 to the following parties:

**U.S. Trustee**
P.O. Box 36170
Phoenix, AZ 85067-6170

**Osborn Maledon P.A**
Jason J. Romero
2929 N. Central Ave., 21st Floor
Phoenix, AZ 85012-2793
Attorneys for In-Laws, L.L.C.

*Everyone attached hereto.*

By \s\ Jason Carthen

DATED this 21st day of April, 2010.

COPY of the foregoing sent via e-mail and
U.S. Mail this 21st day of April, 2010, to:

| | | |
|---|---|---|
| | J. Phillip Glasscock<br>J. Phillip Glasscock, P.C.<br>13430 N Scottsdale Rd Ste 106<br>Scottsdale AZ 85254<br>*Attorneys for Southwest Metal Industries, LLC* | Alan M. Levinsky<br>Buchalter Nemer<br>16435 N Scottsdale Rd Ste 440<br>Scottsdale AZ 85254<br>*Attorneys for Ford Motor Credit Company LLC* |
| Edward K. Bernatavicius<br>230 N. First Avenue, Suite 204<br>Phoenix, AZ 85003 | Joseph Kruchek, Esq.<br>Kutak Rock LLP<br>8601 N Scottsdale Rd Ste 300<br>Scottsdale AZ 85253-2738<br>*Attorneys for Key Equipment Finance, Inc.* | April J. Theis<br>Assistant Attorney General<br>Office of the Attorney General<br>1275 W Washington<br>Phoenix AZ 85007-2997<br>*Attorneys for Arizona Department of Revenue* |
| Phillip G. Mitchell<br>Craig J. Bolton<br>Matthew H. Sloan<br>Jennings, Haug &<br>Cunningham, LLP<br>2800 N. Central Avenue, Suite 1800<br>Phoenix, AZ 85004<br>*Attorneys for M & I Marshall & Ilsley Bank* | Mary Pettit Esq<br>Lehigh Hanson Inc<br>300 E John Carpenter Freeway Ste 1645<br>Irving TX 75062-2772<br>*Attorneys for Hanson Roof Tile Inc* | Madeleine C. Wanslee<br>Gust Rosenfeld PLC<br>201 E Washington Ste 800<br>Phoenix AZ 85004-2327<br>*Attorneys for Maricopa County Treasurer* |
| Sonia M. Blain<br>City Attorney's Office<br>200 W Washington Ste 1300<br>Phoenix AZ 85003-1611<br>*Attorneys for City of Phoenix* | Christopher Payne<br>The Payne Law Office<br>1850 N Central Ave Ste 1130<br>Phoenix AZ 85004<br>*Attorneys for Vista Paper Recycling LLC* | S. Blair Korschun<br>Ascension Capital Group Inc<br>PO Box 201347<br>Arlington TX 76006<br>*Bankruptcy Servicers for Compass Bank* |

3

3040812v1

Steven V. Cheifetz
Cheifetz Iannitelli Marcolini PC
1850 N Central Ave 19th Flr
Phoenix AZ 85004
*Attorneys for Western Refining Wholesale, Inc.*

Daniel P. Beeks
Sherman & Howard LLC
2800 N Central Ave Ste 1100
Phoenix AZ 85004-1043
*Attorneys for Orix Financial Services LLC*

James E. Shively
Poli & Ball PLC
2999 N 44th St Ste 500
Phoenix AZ 85018-7252
*Attorneys for DCFS USA PLLC*

Barbara B. Maroney
15433 N Tatum Blvd Ste 106
Phoenix AZ 85032-4231
*Attorney for General Electric Capital Corp*

4